UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTGENE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ADVANCED BIOLOGICAL LABORATORIES, SA, *et al.*, <br><br> Defendants. | Civil Action No. 08-00642 (BAH) <br> Judge Beryl A. Howell |

## MEMORANDUM OPINION

Defendants Advanced Biological Laboratories, SA and ABL Patent Licensing Technologies, SARL (collectively "ABL") have filed a Motion for Reconsideration under Federal Rule of Civil Procedure 59(e), *see* ECF No. 67, requesting that this Court reconsider its Order granting summary judgment of patent invalidity in favor of Plaintiff SmartGene, Inc. For the reasons explained below, the three grounds proffered by the defendants for reconsideration are unavailing, and the motion is denied.

**I.      FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiff SmartGene, Inc., a North Carolina corporation, brought this lawsuit against defendant Advanced Biological Laboratories, SA, a company with its principal place of business in Luxembourg, seeking declaratory judgment as to the invalidity, unenforceability, and SmartGene's non-infringement of U.S. Patent No. 6,081,786 (the "786 patent") and U.S. Patent No. 6,188,988 B1 (the "988 patent") (collectively, the "patents-in-suit"). *See* First Am. Compl.

---

[1] The Court incorporates by reference the detailed factual and procedural background set forth in its Memorandum Opinion, ECF No. 65. *See SmartGene, Inc. v. Advanced Biological Labs., SA*, 852 F. Supp. 2d 42, 45-48 (D.D.C. 2012).

for Declaratory Judgment ("Am. Compl."), ECF No. 4.  After prolonged litigation, including a consensual stay of proceedings of two and a half years, *see* Order, ECF No. 19 (dated February 3, 2009), granting plaintiff's unopposed motion to stay, SmartGene filed a Motion for Partial Summary Judgment, contending that the "patents-in-suit are facially invalid as directed to non-statutory subject matter under 35 U.S.C. § 101."  Pl.'s Mot. for Part. Summ. J. of Invalidity Under 35 U.S.C. § 101 ("Pl.'s Mot. for Part. Summ. J."), ECF No. 47.[2]

This Court granted the plaintiff's Motion for Partial Summary Judgment, finding that "the defendants' Patent Nos. 6,081,786 and 6,188,988 B1 constitute ineligible subject matter under 35 U.S.C. § 101, and are therefore invalid."  *SmartGene, Inc. v. Advanced Biological Labs., SA*, 852 F. Supp. 2d 42, 68 (D.D.C. 2012).

Following the Court's decision, the defendants moved for reconsideration under Federal Rule of Civil Procedure 59(e), and submitted in support of that motion over 1500 pages of declarations and exhibits, including materials not previously provided to the Court for consideration.  *See* Defs.' Mot. for Reconsideration Under F.R.C.P. 59(e) ("Defs.' Mot."), ECF No. 67.  The plaintiff SmartGene, Inc. opposes the defendants' Motion for Reconsideration, *see* Pl.'s Opp'n to Defs.' Mot. for Reconsideration Under F.R.C.P. 59(e) ("Pl.'s Opp'n"), ECF No. 69, and has moved to strike the declarations and exhibits attached to the defendants' Motion for Reconsideration, *see* Pl.'s Mot. to Strike the Declarations and Certain Exhibits Attached to

---

[2] As the Court explained in its Memorandum Opinion regarding this motion,

> SmartGene stated at the March 9, 2012 Motions Hearing that the Motion was framed as a Motion for "Partial" Summary Judgment because the Motion deals only with the validity of the patents-in-dispute and does not address all disputed claims.  *See* Motions Hearing Transcript ("Tr") (Rough), Mar. 9, 2012, at 9:30, 42:23-43:1; 43:6-12 . . . .  No matter the styling of the pending Motion as a "partial" Motion for Summary Judgment, grant of this Motion is dispositive in this matter since the validity of the patents-in-dispute is the *sine qua non* for all the claims and counterclaims.

*SmartGene, Inc.*, 852 F. Supp. 2d at 45 n.1.  The Court cited to the court reporter's rough draft of the proceedings in the Memorandum Opinion because the parties had not yet requested formal transcripts.  *See id*.

Defs.' Mot. for Reconsideration ("Pl.'s Mot. to Strike"), ECF No. 68. Both the defendants' Motion for Reconsideration and the plaintiff's Motion to Strike are now pending before the Court.[3]

## II.   STANDARD OF REVIEW

"'A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). A motion for reconsideration under Rule 59(e) is "'not simply an opportunity to reargue facts and theories upon which a court has already ruled.'" *Fresh Kist Produce, LLC v. Choi Corp.*, 251 F. Supp. 2d 138, 140 (D.D.C. 2003) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)). Moreover, "the reconsideration and amendment of a previous order is an unusual measure." *Swedish Am. Hosp. v. Sebelius*, 845 F. Supp. 2d 245, 250 (D.D.C. 2012); *see also Jung v. Ass'n of Am. Med. Colls.*, 184 Fed. Appx. 9, 13 (D.C. Cir. 2006) (noting "the high standard for relief under Rule 59(e)"); *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) ("Motions under [Rule 59(e)] are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances."). "Rule 59 was not intended to allow a second bite at the apple." *Oceana, Inc. v. Evans*, 389 F. Supp. 2d 4, 8 (D.D.C. 2005). "In addressing the claims of a party on a motion for reconsideration, the Court is free to expand upon or clarify the reasons supporting its prior ruling." *Bristol-Myers Squibb Co. v. Kappos*, Nos. 09-cv-1330, 09-cv-2420, 2012 U.S. Dist. LEXIS 134299, at *9 (D.D.C. Sept. 20, 2012).

---

[3] The defendants requested oral argument on their Motion for Reconsideration, *see* ECF No. 67 at 1. Since the parties have extensively briefed the pending motions, however, the Court exercises its discretion under Local Civil Rule 7(f) to decide the motions on the papers.

## III. DISCUSSION

The defendants argue that reconsideration of this Court's Order granting summary judgment for Plaintiff SmartGene, Inc. "is necessary for three reasons." Defs.' Brief in Supp. of its Mot. for Reconsideration Under F.R.C.P. 59(e) ("Defs.' Brief"), ECF No. 67-1, at 1. First, the defendants argue that the Court erred in "invalidating all claims of the patents-in-suit, including unasserted claims." *Id*. Second, the defendants argue that "invalidating every claim of both patents, or even the four asserted claims, based solely on an analysis of claim 1 of the '786 patent is an error of law." *Id*. Third, the defendants argue that this Court's ruling "is premised on a clear error of fact and law given that there was a change in controlling law subsequent to the summary judgment proceedings in this case," namely the Supreme Court's decision in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012), which the defendants argue they should have been "provided an opportunity to brief." Defs.' Brief at 1. In connection with this third argument, the defendants have submitted evidence that "ABL seeks to present given the *Prometheus* Court's holdings," *id*. at 7, in the form of a declaration from a named inventor of the patents-in-suit, a declaration of a patent attorney involved in prosecuting the patents-in-suit, and hundreds of pages of related exhibits. *See* ECF Nos. 67-4, 67-5, 67-6, 67-7, 67-8, 67-9, 67-10, 67-11, 67-12, 67-13, 67-14, 67-15, 67-16, 67-17, 67-18, 67-19, 67-20, 67-21, 67-22, 67-23, 67-24, 67-25, 67-26, 67-27, 67-28, 67-29, and 67-30 (totaling over 1500 pages). The Court addresses these arguments *seriatim* below.

First, the Court turns to the defendants' contention that "invalidating all claims of the patents-in-suit, including unasserted claims, is an error of law." Defs.' Brief at 1. The defendants claim that it is "undisputed that SmartGene chose to contest the validity of only claims 1 and 23 of each of the '786 and '988 patents" and that the plaintiff "provided no

argument regarding any claims other than the four claims at issue, and never alleged a case or controversy existed with respect to any other claims." *Id*. at 2; *see also id*. at 3 ("In short, there was never a case or controversy with respect to anything but claims 1 and 23 of the '786 and '988 patents."). The defendants' assertions in this regard are patently false, however. The plaintiff made it abundantly clear that it was seeking declaratory judgment of invalidity as to the '786 patent and the '988 patent. *See, e.g.*, Am. Compl., ECF No. 4, at 4 (seeking, in Count II, "Declaratory Judgment of Invalidity of the '786 Patent"); *id*. at ¶ 20 ("The '786 Patent is invalid for failing to comply with 35 U.S.C. §§ 101-103 and/or 112"); *id*. at 5 (seeking, in Count IV, "Declaratory Judgment of Invalidity of the '988 Patent"); *id*. at ¶ 26 ("The '988 Patent is invalid for failing to comply with 35 U.S.C. §§ 101-103 and/or 112"); *id*. at 6 (requesting, in Prayer for Relief, "A declaration that each of the claims of the '786 Patent are invalid" and "A declaration that each of the claims of the '988 Patent are invalid."); Pl.'s Mot. for Clarification and/or Reconsideration, ECF No. 44, at 1 (noting that "[i]n April 2008, SmartGene filed its original Complaint (Dkt# 1) in this declaratory judgment action seeking a declaration that U.S. Patent Nos. 6,081,786 and 6,188,988 B1 (collectively, the 'patents-in-suit') are invalid and that SmartGene does not infringe the patents-in-suit."); Pl.'s Mot. for Part. Summ. J. of Invalidity Under 35 U.S.C. § 101 ("Pl.'s Mot"), ECF No. 47, at 1 ("[T]he patents-in-suit are facially invalid as directed to non-statutory subject matter under 35 U.S.C. § 101."); LCvR 7(h) Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Part. Summ. J. of Invalidity Under 35 U.S.C. § 101 ("Pl.'s Facts"), ECF No. 47-1, at 1 (noting that the plaintiff "filed this declaratory judgment action seeking a declaration that U.S. Patent Nos. 6,081,786 and 6,188,988 B1 (collectively, the 'patents-in-suit' and individually as 'the '786 patent' and 'the '988 patent', respectively) are invalid and unenforceable"); Pl.'s Mem. in Supp. of Part. Summ. J. of Invalidity

Under 35 U.S.C. § 101 ("Pl.'s Mem."), ECF No. 47-2, at 1 ("SmartGene filed this declaratory judgment action seeking a declaration that U.S. Patent Nos. 6,081,786 and 6,188,988 B1 (collectively, the 'patents-in-suit') are invalid and that SmartGene does not infringe the patents-in-suit."); *id*. ("SmartGene now moves for summary judgment of invalidity of the claims of the patents-in-suit on the ground that the claims are directed to non-statutory subject matter under 35 U.S.C. §101"); *id*. (arguing that "*all of the claims* of the patents-in-suit are invalid and this motion should be granted") (emphasis added); *id*. at 2 (noting that "[t]his motion, if granted, is dispositive of the validity of the patents-in-suit"); *id*. at 10 (arguing that "the claims of the patents-in-suit are clearly directed to subject matter that is ineligible for patenting and summary judgment of invalidity should be granted"); *id*. at 16-17 ("For the reasons stated above, the claims of the '786 patent and the '988 patent are invalid for failure to claim patent-eligible subject matter."); Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. for Part. Summ. J. of Invalidity Under 35 U.S.C. § 101 ("Pl.'s Reply"), ECF No. 55, at 1 (concluding that the defendants' opposition "reinforces the compelling case for finding that the *patents-in-suit* are invalid as failing to comply with 35 U.S.C. § 101") (emphasis added); *id*. at 11 ("Regardless of how the claims of the patents-in-suit are analyzed, whether under the software *per se* rubric, the mental steps rubric, or the machine or transformation test, they are abstract. Accordingly, this Court should grant SmartGene's motion and invalidate the claims of the patents-in-suit.").

Rather incredibly in the face of these statements in the record, the defendants characterize as "*undisputed* that SmartGene chose to contest the validity of only claims 1 and 23 of each of the '786 and '988 patents," and aver, in particular, that the plaintiff "never argued the invalidity of dependent claims 2-22, 24-44, nor the invalidity of claims 45-66 of both patents, claims directed to various 'computer program products.'" Defs.' Brief at 2-3 (emphasis added).

6

Ignoring the plain breadth of the plaintiff's challenge to the validity of the patents-in-suit, the defendants myopically point to the plaintiff's statement that "[t]he following comprises the text of the four claims in suit reproduced in their entirety" together with the plaintiff's listing of claims 1 and 23 of the '786 and '988 patents, and suggest that "SmartGene acknowledged that '[i]n this litigation, ABL is only asserting claims 1 and 23 of the '988 patent . . . .'" *Id*. at 2 n.1. While the LCvR 7(h) Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment, ECF No. 47-1 — to which the defendants never responded — does focus on those four claims, *see* Pl.'s Facts at ¶¶ 5, 7, 9, 10, plaintiff SmartGene consistently asserted that it was contesting the validity of *all of the claims* in both the '786 patent and the '988 patent. *See, e.g., id*. at ¶ 1 (noting that SmartGene "filed this declaratory judgment action seeking a declaration that U.S. Patent Nos. 6,081,786 and 6,188,988 B1 (collectively, the 'patents-in-suit' and individually as 'the '786 patent' and 'the '988 patent', respectively) are invalid and unenforceable").  In fact, the plaintiff made clear that it believed that claim 1 of the '786 patent "is representative of *all of the claims* of the patents-in-suit," Pl.'s Mem. at 8 n.3 (emphasis added), and that, based on a finding of invalidity of claim 1 of the '786 patent, the patents-in-suit were thus invalid.  While the defendants may not *agree* that the plaintiff was correct in asserting that claim 1 of the '786 patent was representative of "all of the claims of the patents-in-suit," or in requesting declaratory judgment that the patents-in-suit in their entirety were invalid, the defendants' assertion that "SmartGene provided *no* argument regarding any claims other than the four claims at issue, and never alleged a case or controversy existed with respect to any other claims," Defs.' Brief at 2 (emphasis added), is simply disingenuous in the face of the above-cited statements in the plaintiff's filings.

In any case, the defendants had the opportunity to contest these arguments in their Opposition to the Plaintiff's Motion for Partial Summary Judgment, and failed to do so. *See generally* Defs.' Opp'n to SmartGene's Mot. for Part. Summ. J of Invalidity Under 35 U.S.C. § 101, ECF No. 50.

Even if the defendants somehow did not understand from the plaintiff's motion and the Amended Complaint that the plaintiff was contesting all of the claims in the patents-in-suit based on an analysis of claim 1 of the '786 patent, the Court explicitly brought this issue to the attention of the defendants at the motions hearing held on the plaintiff's Motion for Partial Summary Judgment by asking the defendants' counsel directly the following question:

> THE COURT:  Let me clarify one other thing that I promised I was going to ask you . . . . You know, because SmartGene does say that for purposes of this Section 101 Analysis that claim 1 of 786 Patent is representative of *all the claims of the patents in suit*, you didn't really address that in your brief.  So I wanted to know if that's your position.

Transcript of Oral Argument ("Tr.") (Mar. 9, 2012), ECF No. 70, at 31, lines 11-17 (emphasis added).  The defendants' counsel responded, stating:

> That is not our position.  As SmartGene mentioned, and I don't remember if it was their opening brief or their reply brief, there are two different types of claims at issue in the case, both method claims and system claims.  And we believe there would be a different analysis as to abstractness issue and whether it can all be performed in the mind between a method claim and a system claim.

*Id*. at lines 18-24.[4]

---

[4] The Court asked the defendants' counsel for further explanation of "how the analysis under 101 would differ for each of the four claims, if that's what you think I have to do." Tr. at 32, lines 5-6. The defendants' counsel responded as follows:

> Okay.  And to clarify, for purposes of this argument we are not arguing that kind of the different kind of steps that are performed are different.  It's mainly focused on the method versus the system claim, because cases such as *Bilski*, when they are talking of business method patents, and things that can be completed entirely in the mind, are method patents.  That's what they discussed.  So you can perform this method entirely in your mind.  Not this method, but the method at *Bilski* for example.  And for a system claim, there is a little bit different analysis because claiming an actual system, I would argue, makes it even less abstract because it's not just a method where, okay, we will look at who is performing the method, how do you perform the method, and what's

As the Court noted in its Memorandum Opinion, the defendants' counsel's response to this question at the motions hearing provided the Court no reason to conclude that claim 1 of the '786 patent was *not* representative of all of the claims of the patents-in-suit. *See SmartGene, Inc.*, 852 F. Supp. 2d at 46 n.4 (noting that the defendants "fail to cite any authority that supports their assertion [that "method" and "system" claims require a different standard of review for subject matter patentability], and ignore authority to the contrary") (citing *In re Meyer*, 688 F.2d 789, 795 n.3 (C.C.P.A. 1982) ("for purposes of section 101, [claims reciting "means for" performing the steps set forth in the method claims] are not treated differently from method claims"). Thus, the defendants had the opportunity to address this issue at the motions hearing, and could have provided additional briefing if they believed that the Court had an incorrect understanding of the plaintiff's position. They failed to do so before, during and even after the motions hearing, and have made only a last gasp effort to address the issue of whether claim 1 in both patents-in-suit is representative of all the claims after the Court issued its ruling and in connection with their motion for reconsideration.

The defendants feign ignorance in urging the Court to grant their Motion for Reconsideration, arguing that "[i]f SmartGene truly believed that all the claims of the two patents were a threat, it should have unambiguously argued the invalidity of <u>all</u> claims in its motion." Defs.' Reply Mem. in Supp. of Its Mot. for Reconsideration Under F.R.C.P. 59(e) ("Defs.' Reply"), ECF No. 71, at 1 (emphasis in original). The plaintiff, as indicated above, did just that. *See, e.g.,* Pl.'s Mem. at 2 ("This motion, if granted, is dispositive of the validity of the

---

> performing the method, but rather what we have claimed in Claim 23 is a system, the very specific system that is used to select therapeutic treatment regimen[ ]s. It's even less abstract.

*Id*. at lines 7-23. The Court then responded by asking the defendants' counsel, "And it's less abstract, why?," *id*. at lines 24-25, to which the defendants' counsel responded, "Because it is even more intimately connected to the computer, as it is the system. It's not just a method where arguably – well, they have argued that the computing device as used in the claims can be a human mind." *Id*. at 33, lines 1-4.

patents-in-suit"); *see id.* at 1 ("Accordingly, all of the claims of the patents-in-suit are invalid and this motion should be granted"); Pl.'s Reply at 1 (concluding that the defendants' opposition "reinforces the compelling case for finding that the *patents-in-suit* are invalid as failing to comply with 35 U.S.C. § 101") (emphasis added); *id.* at 11 ("[T]his Court should grant SmartGene's motion and invalidate *the claims* of the patents-in-suit.") (emphasis added); *see also* Am. Compl. at 4 (seeking, in Count II, "Declaratory Judgment of Invalidity of the '786 Patent"); *id.* at ¶ 20 ("The '786 Patent is invalid for failing to comply with 35 U.S.C. §§ 101-103 and/or 112"); *id.* at 5 (seeking, in Count IV, "Declaratory Judgment of Invalidity of the '988 Patent"); *id.* at ¶ 26 ("The '988 Patent is invalid for failing to comply with 35 U.S.C. §§ 101-103 and/or 112"); *id.* at 6 (requesting, in Prayer for Relief, "A declaration that each of the claims of the '786 Patent are invalid" and "A declaration that each of the claims of the '988 Patent are invalid."). That the defendants would not understand from these statements that the plaintiff was challenging each of the claims of the patents-in-suit strains credulity.

Indeed, in its opposition to the defendants' Motion for Reconsideration, SmartGene reaffirms that, in this lawsuit, it "sought a declaration of invalidity of the *entire* '786 and '988 patents." Pl.'s Opp'n at 3 n.2 (emphasis added). The defendants, however, remain adamant in their Reply that "SmartGene does not dispute the critical fact that claims 1 and 23 were the only claims subject to its motion for partial summary judgment." Defs.' Reply at 1. That claim is simply untrue. *See* Pl.'s Opp'n at 3 n.2 (SmartGene asserting that it "sought a declaration of invalidity of the *entire* '786 and '988 patents") (emphasis added). The plaintiff made amply clear its theory of the case, premised on the invalidity of claim 1 of the '786 patent under 35 U.S.C. § 101, and the Court will not reopen the litigation now that the defendants have belatedly realized the implications of the plaintiff's theory, only after issuance of this Court's decision.

*See, e.g., Daniel v. Fulwood*, No. 10-cv-862, 2012 U.S. Dist. LEXIS 138549, at *4 (D.D.C. Sept. 27, 2012) ("Motions for reconsideration are not simply an opportunity to reargue facts and theories upon which a court has already ruled.") (citations and internal quotation marks omitted).

Accordingly, since the defendants' argument that "[i]nvalidation of [u]nasserted [c]laims [i]s [a]n [e]rror of [l]aw," is based on the false premise that SmartGene "chose to contest the validity of only claims 1 and 23 of each of the '786 and '988 patents," Defs.' Brief at 2, this argument provides no reason for the Court to reconsider its decision.[5]

Second, the Court turns to the defendants' related argument that "invalidating every claim of both patents, or even the four asserted claims, based solely on an analysis of claim 1 of the '786 patent is an error of law." Defs.' Brief at 1.

As a threshold matter, the defendants take issue with SmartGene's argument that SmartGene articulated its claim grouping theory – that claim 1 of the '786 patent was representative of all of the claims in the patents-in-suit – in its Motion for Partial Summary Judgment. *See* Pl.'s Mem. at 8 n.3 ("Accordingly, for the purpose of the § 101 analysis, claim 1 of the '786 patent is representative of all of the claims of the patents-in-suit."). Again, the defendants feign surprise, asserting that, "[i]f this was notice that SmartGene was arguing the invalidity of 127 separate claims — the vast majority of which are dependent claims — then it

---

[5] The defendants cite a case from the Federal Circuit for the proposition that "[a] party claiming declaratory judgment jurisdiction 'has the burden of showing . . . that there is a substantial controversy, between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Defs.' Brief at 2 (quoting *Streck, Inc. v. Research & Diagnostic Sys.*, 665 F.3d 1269, 1282 (Fed. Cir. 2012). In response, the plaintiff spends much of its opposition to the defendants' Motion for Reconsideration articulating why there was a "very real controversy regarding the entire '786 and '988 patents due to ABL's use of the '786 and '988 patents in the marketplace in a manner that is significantly injuring SmartGene's business." Pl.'s Opp'n at 2. In their reply, the defendants deem to be "irrelevant" SmartGene's allegation that the '786 and '988 patents have been used to ward off SmartGene's potential clients "since the proper inquiry is what SmartGene argued in its motion for summary judgment." Defs.' Reply at 1. Since the Court concludes, from the plain language of SmartGene's Motion for Partial Summary Judgment that SmartGene challenged the patents-in-suit in their entirety, the Court will not proceed here in analyzing SmartGene's allegations of injury in the marketplace as outlined in its opposition to the Motion for Reconsideration.

successfully hid an elephant in a mousehole." Defs.' Reply at 1 n.3. The Amended Complaint and the plaintiff's Motion for Partial Summary Judgment are no "mousehole[s]," however. In those filings, the plaintiff made it crystal clear that it sought nothing less than declaratory judgment as to the invalidity of the '786 and '988 patents, and that it believed that, "for the purpose of the § 101 analysis, claim 1 of the '786 patent is representative of all of the claims of the patents-in-suit." Pl.'s Mem. at 8 n.3. The defendants' argument that it did not have notice of the plaintiff's claim grouping theory is thus unavailing.

The defendants' argument that the grouping of claims was not proper in this case is similarly without merit. The defendants acknowledge that "[c]laims may be grouped together only if they involve the same issues of validity and the claim issues are substantially materially identical." Defs.' Brief at 3 (citing *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1370 (Fed. Cir. 2003). Yet, the defendants argue that in this case the Court improperly grouped the claims of the '786 and '988 patents together, "thereby ignoring differences in the form, type and limitations of 131 claims in two different patents." Defs.' Brief at 3.

The Court did not ignore the differences, however, but concluded in its Memorandum Opinion that the "differences" between the system and method claims, at least, were "immaterial." *SmartGene, Inc.*, 852 F. Supp. 2d at 46. Specifically, the Court acknowledged SmartGene's assertion that the "differences between Claim 1 in the '786 patent and '988 patent are insignificant, and that these first claims are representative of all of the claims of the patents-in-dispute." *Id*. at 45 (citing Pl.'s Mem. in Supp. of Mot. for Part. Summ. J., ECF No. 47, at 8 n.3). The Court then pointed out that the defendants did not address this assertion *at all* in their opposition brief. *See id*. at 45-46. The Court also pointed out that when the defendants were asked about this issue at the motions hearing, the defendants' counsel answered that, "for a

system claim, there is a little bit different analysis because claiming an actual system . . . makes it even less abstract because it's not just a method . . . [I]t is even more intimately connected to the computer, as it is the system." *Id*. at 46 n.4 (quoting Rough Tr. 30:4-15). The Court rejected this argument, noting that "[t]he defendants fail to cite any authority that supports their assertion, and ignore authority to the contrary." *Id*. (citing *In re Meyer*, 688 F.2d 789, 795 n.3 (C.C.P.A. 1982) ("for purposes of section 101, [claims reciting "means for" performing the steps set forth in the method claims] are not treated differently from method claims")).

The defendants now argue that "*even assuming* that the Court could review claims 2-22 and 24-66 of both patents though they were not challenged by SmartGene, there is no basis in the record for the Court to find, for example that the 'computer readable program code means' limitations of claims 45-66 are substantially materially identical to claims *that do not recite* these limitations." Defs.' Brief at 4 (emphasis in original). First of all, the plaintiff *did* challenge these claims, because it challenged the patents-in-suit in their entirety. *See, e.g.*, Pl.'s Mem. at 1 ("SmartGene now moves for summary judgment of invalidity of the claims of the patents-in-suit on the ground that the claims are directed to non-statutory subject matter under 35 U.S.C. §101."). Second, the defendants did not raise these arguments while the plaintiff's Motion for Partial Summary Judgment was pending, and provides the Court no reason to consider them now. As the plaintiff notes, a motion for reconsideration is not an opportunity for "another bite at the apple." *See* Pl.'s Opp'n at 4.[6] Therefore, the Court will not revisit its decision now, when the defendants had the opportunity to address this issue during the summary judgment briefing.

---

[6] Even in this Motion for Reconsideration, the defendants' briefing is incomplete, and only provides hints of the defendants' argument. The defendants state, in a footnote, without elaboration that, "[w]hile not addressed at the Motions Hearing, the computer program product claims 45-66 for each of the patents would also necessarily require a different standard of review." Defs.' Brief at 4 n.2. The defendants provide no further decoding of this statement for the Court, *i.e.*, to what "different standard of review" they are referring. Again, the defendants have simply provided no reason for this Court to reconsider its decision.

Finally, the Court turns to the defendants' argument that that this Court's ruling is "premised on a clear error of fact and law given that there was a change in controlling law subsequent to the summary judgment proceedings in this case." Defs.' Brief at 1. Specifically, the defendants contend that they should have been "provided an opportunity" to supplement their briefing after the Supreme Court issued its decision in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012), and that, given the change in law, issues of material fact exist that preclude the granting of summary judgment. This argument does not merit this Court's reconsideration of its decision for at least three reasons.

First, as is relevant to this Court's decision in this case, *Prometheus* was not a "change in controlling law." Instead, *Prometheus*, affirmed or clarified earlier Supreme Court precedent related to a 35 U.S.C. § 101 analysis. *See, e.g., SmartGene, Inc.*, 852 F. Supp. 2d at 51 (noting that the Supreme Court in *Bilski v. Kappos*, 130 S. Ct. 3218, 3225, made clear that the 35 U.S.C. § 101 inquiry is a "threshold test," and, despite indications to the contrary by the Federal Circuit, *Prometheu*s "clarified that a 35 U.S.C. § 101 subject matter patentability inquiry *is* the threshold analysis for determining patent validity") (emphasis in original); *SmartGene, Inc.*, 852 F. Supp. 2d at 52 (observing that the Supreme Court in *Bilski* "highlighted a trilogy of its decisions – namely *Gottschalk v. Benson*, *Parker v. Flook*, and *Diamond v. Diehr* – as useful 'guideposts'" and that *Prometheus* "reaffirms the importance of these tools"); *SmartGene, Inc.*, 852 F. Supp. 2d at 55 (finding that, "as in *Benson*, *Flook*, *Bilski II*, and *Prometheus*," the "'patent application here can be rejected under [the Supreme Court's] precedents'") (citation omitted); *SmartGene, Inc.*, 852 F. Supp. 2d at 58 (explaining that pre-*Prometheus*, the Supreme Court "did not foreclose the use of the machine-or-transformation test" and that *Prometheus* "rejected not the MOT test but the Federal Circuit's application of that test"); *SmartGene, Inc.*, 852 F. Supp. 2d at

14

55 ("The Supreme Court in *Prometheus*, however, did not retreat from a transformation analysis as part of a subject matter patentability test under section 101").

Second, in a related point, *Prometheus* was not determinative of the outcome in this case. Simply stated, this Court's decision would have been the same even if it had been issued before the Supreme Court released its decision in *Prometheus*. The defendants are again disingenuous when they argue that "this Court assumed that the steps recited in the claims were 'well-understood, routine, conventional activity already engaged in by the scientific community' even though the parties never briefed this precise issue." Defs.' Brief at 6. This is just not true. The parties *did* essentially brief this issue. The plaintiff in its Motion for Partial Summary Judgment noted, for example, that "[t]he patents-in-suit . . . claim[ ], in one form or another, mental processes that a person, e.g., a treating physician or consulting physician, performs in selecting a therapeutic treatment regimen for a known disease." Pl.'s Mem. at 3; *see also id*. at 6 ("In effect, the claims of the patents-in-suit are directed to nothing more than a mental process in which a person, e.g., a physician, engages when determining a treatment for a patient suffering from a disease or a medical condition" and "[t]his process is an abstraction, as it is a fundamental task in which a physician engages in his/her mind, each time a patient is treated."); *see id*. at 8-9 (chart describing the human performance equivalent of each claimed method of claim 1 of the '786 patent). The defendants thus had the opportunity to respond in any way they saw fit to the plaintiff's arguments that, *inter alia*, "each limitation of the method claims is readily performable, either entirely mentally within a physician's mind, or potentially with the aid of pencil and paper," Pl.'s Mem. at 7, and that "the steps of claim 1 can be performed in the human mind," *id*. at 9. In fact, they did so in their opposition to that motion, even before the release of *Prometheus*, arguing, for example, that "[o]ne significant advantage provided by the claimed

invention is that a physician has the benefit of more than his or her mind can retain: i.e., the databases can be constantly updated with the most current information in recognition that even the most skilled clinician cannot be expected to know about or memorize every instance of the latest research." Defs.' Opp'n at 2; *see also id*. ("Rather than supplanting the role of the physician, as SmartGene suggests, the invention seeks to improve patient treatment by giving the physician reference to a program which can exceed his or her own capabilities.").[7] This Court analyzed claim 1 of the '786 patent and agreed with the plaintiff in its characterization of the claims of the patents-in-suit. To the extent that the defendants would now like to bolster their arguments with evidence that apparently would have been available to them while the Motion for Partial Summary Judgment was pending, they may not do so.[8]

Finally, the Supreme Court issued its decision on March 20, 2012, and this Court issued its decision on March 30, 2012. Thus, the defendants had ten days in which to apprise the Court of the Supreme Court's decision in *Prometheus*, and how it relates to the instant case, or request an opportunity to brief the case. During that period, the parties provided no notice of supplemental authority regarding *Prometheus*. The defendants now protest that they "never had

---

[7] The defendants did not at that time suggest, as they do now, that *Diamond v. Diehr* stands for the proposition that "evidence of 'novelty' of any part of a claim is 'of no relevance' for purposes of § 101." Defs.' Opp'n to Pl.'s Mot. to Strike Declarations and Certain Exhibits Attached to Defs.' Mot. for Reconsideration, ECF No. 72, at 2 (quoting *Diamond v. Diehr*, 450 U.S. 175, 189 (1981)). Instead, they simply responded to the plaintiff's arguments with its own, evidently realizing that the Court may consider these arguments in rendering a judgment. The defendants may not now use *Prometheus* as a vehicle for relitigating these arguments, this time with factual support for their arguments.

[8] In connection with the defendants' argument that they should have been given an opportunity to provide supplementary briefing regarding the *Prometheus* decision, the defendants submit with their Motion for Reconsideration over 1500 pages of declarations and exhibits, that the defendants say "would have been submitted if ABL had been given an opportunity to brief Prometheus." Defs.' Brief at 1-2. The plaintiff has filed a Motion to Strike these declarations, as well as the exhibits attached to the declarations, and any reference to them in the defendants' Motion for Reconsideration. *See* ECF No. 68 at 11. Since the Court denies the defendants' Motion for Reconsideration, disagrees with the defendants' contention that there was a change in controlling law, and finds no other reason that the defendants should now be able to supplement the record in this case with evidence that could have been provided before this Court made its decision on the plaintiff's Motion for Partial Summary Judgment, the Court will grant the Plaintiff's Motion to Strike the Declarations and Certain Exhibits Attached to Defendant's Motion for Reconsideration. *See* ECF No. 68.

the opportunity to brief that case." Defs.' Brief at 4.  If this were such an important case to the defendants, they could have and should have briefed the case on their own during that period, or at least notified the Court that the case presented new controlling authority about which they wished to provide supplemental briefing.  They did not do so, and will not now be allowed to use the *Prometheus* decision as a way to reopen this litigation, particularly when that case was not a change in controlling law with respect to the instant case, and not determinative, but rather only supportive, of this Court's decision in this matter.

## IV.   CONCLUSION

Accordingly, for the reasons explained above, the Defendants' Motion for Reconsideration Under F.R.C.P. 59(e), ECF No. 67, is DENIED, and the Plaintiff's Motion to Strike the Declarations and Certain Exhibits Attached to Defendant's Motion for Reconsideration, ECF No. 68, is GRANTED.  An appropriate Order will accompany this Memorandum Opinion.

**DATED: January 3, 2013**

_____
BERYL A. HOWELL
United States District Judge